IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:22CR679 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| JAYON FLORENCE, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION TO SUPPRESS |

Now comes the United States of America, by and through its counsel, Rebecca C. Lutzko, United States Attorney, Colleen Egan, Assistant United States Attorney, and hereby responds in opposition to defendant Jayon Florence's motion to suppress. (R. 30: Motion to Suppress, PageID 94-101). As set forth below, the affidavit clearly established probable cause to search Florence's residence. As a result, Florence's motion should be denied without a hearing.

**I.     BACKGROUND**

    **A.     Facts**

On January 17, 2023, Task Force Officer Matthew Curley from the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter, "ATF") sought a search warrant for XXXX Melbourne Road, East Cleveland, Ohio 44112. (R. 31: Supplemental Motion to Suppress, 102-123). The search warrant was presented to Magistrate Judge Jennifer D. Armstrong. Judge Armstrong approved the search warrant, finding sufficient probable cause outlined within TFO Curley's affidavit. (Id.).

In the affidavit included with the search warrant application, TFO Curley outlines the facts of this investigation. (Id. Pgs. 3-18). Specifically, TFO Curley explains that Florence was

identified as the individual running a drug trafficking business in place of Malik Brooks while Brooks was in jail. (Id.). TFO Curley outlines four controlled purchase between an undercover officer (hereinafter, "UC") and Florence on December 21, 2022, December 22, 2022, December 30, 2022 and January 13, 2023. (Id.).

TFO Curley explains that, prior to the controlled purchase on January 13, 2023, ATF set up surveillance on Florence's residence located at XXXX Melbourne Road, East Cleveland, Ohio 44112. (Id.). On January 13, 2023, utilizing physical and electronic surveillance, ATF agents observed Florence leave his residence at Melbourne and meet the UC at the predetermined meeting place, without stopping at any other location, and then sell 7.2 grams of fentanyl to the UC and return back to his residence. (Id.).

**B.     Procedural History**

On November 30, 2023, a federal grand jury returned an indictment charged Brooks with the following:

- Count 1: Felon in Possession of Firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1);
- Count 2: Illegal Possession of a Machinegun, in violation of 18 U.S.C. § 922(o) and 924(a)(2);
- Count 3: Receipt or Possession of Unregistered Firearm, in violation of 26 U.S.C. § 5861(d);
- Count 4: Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);
- Count 5: Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i);
- Count 6: Assaulting Certain Officers of Employees, in violation of 18 U.S.C. § 111.

On April 6, 2023, a federal grand jury returned a superseding indictment charging Brooks and Florence with the following:

- Count 1: [Brooks & Florence] Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846;
- Count 2: [Brooks] Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);
- Counts 3- 6: [Florence] Distribution of a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);
- Count 7: [Florence] Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);
- Count 8: [Brooks] Felon in Possession of Firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1);
- Count 9: [Brooks] Illegal Possession of a Machinegun, in violation of 18 U.S.C. § 922(o) and 924(a)(2);
- Count 10: [Brooks] Receipt or Possession of Unregistered Firearm, in violation of 26 U.S.C. § 5861(d);
- Count 11: [Brooks & Florence] Illegal Possession of a Machinegun, in violation of 18 U.S.C. § 922(o) and 924(a)(2);
- Count 12: [Brooks & Florence] Receipt or Possession of Unregistered Firearm, in violation of 26 U.S.C. § 5861(d);
- Count 13: [Brooks] Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i);
- Count 14: [Florence] Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i);

(R. 10: Indictment, PageID 27-35). Both Brooks and Florence were arraigned by Magistrate Judge Amanda M. Knapp on April 14, 2023, where both plead not guilty to all counts. (Non-Document Minutes Entries, April 14, 2020).

Presently before the Court is Florence's motion to suppress, filed on October 5, 2023 (R. 30: Motion to Suppress, PageID 94-101) and his supplemental motion to suppress, filed on October 5, 2023. (R. 31: Supplemental Motion to Suppress, 102-123), as well as Brooks' Motion to Join Co-Defendant Jayon Florence's Motion to Suppress, filed on October 5, 2023 (R. 32: Motion to Join Motion to Suppress). Florence's motion seeks suppression of "all items seized from the Melbourne address." (R. 30: Motion to Suppress, PageID 94-101). Specifically, Florence asserts that the "[t]he search warrant in this case fails to establish probable cause that

evidence of criminal activity would be found specifically at the Melbourne residence." As outlined below, this argument fails.

## II. ARGUMENT

The Fourth Amendment protects against unreasonable searches and seizures and provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. As such, a warrant may not issue absent probable cause, which requires a reasonable basis for believing that evidence of crime will be found in a particular place under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-35 (1983). "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." United States v. Besase, 521 F.2d 1306, 1307 (6th Cir. 1975). The degree of certainty required in an affidavit in support of a search warrant is not measured by a "more likely than not" inquiry. Greene v. Reeves, 80 F.3d 1101, 1105 (6th Cir. 1996) (reversing district court's finding of no probable cause, holding it erred in applying a preponderance standard to the determination). But see United States v. Bass, 785 F.3d 1043 (6th Cir. 2015) (totality of circumstances supported claims in search warrant affidavit that evidence of fraud would be discovered in defendant's cell phone).

Reasonable grounds for belief that there is probable cause is "supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted). In making a probable cause determination, a judge must

4

"make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238; see also United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998), cert. denied, 525 U.S. 1086 (1999). An affidavit is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000). Search warrants are, therefore, judged on the totality-of-the-circumstances. Id. at 307 (citing Gates, 462 U.S. at 239). Further, when reviewing a judge's probable cause determination, courts give great deference to the issuing judge's determination of probable cause. United States v. Tagg, 886 F.3d 579, 586 (6th Cir. 2018); see also United States v. McPherson, 469 F.3d 518 (6th Cir. 2006) ("[t]his court pays great deference to the determinations of probable cause made by a state magistrate.").

### A. The Nexus Requirement

To support "a finding of probable cause, there must be a 'sufficient nexus' between the place searched and the evidence sought." United States v. Kenny, 505 F.3d 458, 461 (6th Cir. 2007) (citing United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004)). "[W]hether a sufficient nexus has been shown to a particular location turns in part on the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere, and the normal inferences that may be drawn as to likely hiding places." United States v. Savoca, 761 F.2d 292, 298 (6th Cir. 1985). See also United States v. Miggins, 302 F.3d 384, 393-94 (6th Cir.), cert. denied, 537 U.S. 1130 (2002). Probable cause does not require an actual showing of criminal activity at a particular location, but a "probability or substantial chance of criminal activity." United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991).

5

Florence claims that the affidavit failed to provide a nexus between his criminal activity and the residence. This critical analysis of what the subject affidavit allegedly lacks is not the proper basis for review. Allen, 211 F.3d at 975. Nevertheless, the affidavit provides the judge with a substantial basis for concluding that the search would uncover evidence of criminal activity as required by Fourth Amendment. See Gates, 462 U.S. at 238.

In his affidavit, TFO Curley clearly outlines several controlled purchases by the UC. (R. 31: Supplemental Motion to Suppress, 102-123). He clearly explains the phone calls that took place prior to the purchases and the ATF investigators' observations during the controlled purchases. There is no doubt from the affidavit that Florence is a drug trafficker.

Specifically, TFO Curley explains details surrounding the controlled purchases between UC and Florence on December 14, 2022 (Id.). Here, UC placed a phone call to Florence to discuss the purchase of $200 worth of narcotics from Florence in which Florence told UC to meet him at an intersection of E115 and St. Clair. (Id.). Then, again TFO Curly explains details surrounding the controlled purchase on December 22, 2022. (Id.). The UC placed a call to Florence and a meeting location was determined for the purchase of $200 worth of narcotics. (Id.). Florence and the UC met that same day, and Florence provided the UC with narcotics that weighed in the field 5.22 grams and was analyzed and determined to be a mixture of heroin and acetylfentanyl, both Schedule I substances, and flourofentanyl, fentanyl, 4-ANNP and cocaine, all Schedule II substances. (Id.). Investigators attempted to follow Florence after this controlled buy but were unable due to his aggressive driving style. (Id.). After some conversation about prices between the UC and Florence on December 28, 2022, the UC contacted Florence on December 30, 2022, and they arranged a time to meet for the UC to buy 5 grams for $250. (Id.). On December 30, 2022, TFO Curley explains, the UC met with Florence at the intersection used

6

in the first controlled purchase, and Florence sold the UC what lab analysis determined to be 5.96 grams of a mixture of heroin and acetylfentanyl, both Schedule I substances, and flourofentanyl, fentanyl, 4-ANNP and cocaine, all Schedule II substances. (Id.).

Then, TFO Curley outlines the events of a controlled purchase of narcotics on January 13, 2022. (Id.). On this date, UC contacted Florence about purchasing narcotics, and Florence informed UC that he still had to get dressed and come outside. (Id.). During the conversation, Florence told the UC to relax that "the s**t isn't going anywhere." Florence informed the UC that he would be ready in a minute and instructed UC to meet him at the intersection used previously for the drug transaction. (Id.). TFO Curley details that investigators were surveilling Florence physically and through electronic Pings of his cellphone. (Id.). After telling UC where to meet, Florence was observed leaving XXXX Melbourne Road, East Cleveland, Ohio 44112 and getting into his vehicle and driving to the intersection, where he sold the narcotics to UC. (Id.). After said meeting, TFO Curley describes Florence then drove back to his residence at XXXX Melbourne Road, East Cleveland, Ohio 44112. (Id.).

In their joint motion, Brooks and Florence allege that the affidavit failed to provide a nexus between Florence's criminal activity and his residence. However, he fails to acknowledge the totality of the circumstances. As such, his argument is fruitless. An affidavit is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000). Search warrants are, therefore, judged on the totality-of-the-circumstances. Id. at 307 (citing Gates, 462 U.S. at 239). When reviewing a judge's probable cause determination, courts give great deference to the issuing judge's determination of probable cause. United States v. Tagg, 886 F.3d 579, 586 (6th Cir. 2018); see also United States v. McPherson, 469 F.3d 518 (6th Cir. 2006) ("[t]his court pays

7

great deference to the determinations of probable cause made by a state magistrate."). Additionally, the Sixth Circuit has stated that the "federal courts examine the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." United States v. Moore, 999 F.3d 993 (6th Cir. 2021). "The courts should not undertake a *de novo* review of the sufficiency of an affidavit, nor should they 'invalidate a warrant by interpreting an affidavit in a hyper technical, rather than a commonsense, manner.'" United States v. Pelham, 801 F.2d 875, 877 (6th Cir. 1986) (citation omitted), cert. denied, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987).

Further, the Sixth Circuit has stated that the magistrate judge who issues the search warrant "may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." United States v. Williams, 544 F.3d 683, 687 (6th Cir. 2008). Additionally, "evidence is likely to be found where the dealers live." United States v. Jones, 159 F.3d 969, 975 (6th Cir. 1998) (citation and alteration omitted).

When reviewing the totality of the circumstances, SA Curley's affidavit clearly outlines that there was a substantial basis for the issuing Judge to find probable cause that evidence of drug trafficking would be found in the residence at XXXX Melbourne Road, East Cleveland, Ohio 44112. When taking into consideration the controlled purchases by UC, along with the surveillance conducted where Florence went from his residence to conduct the drug transaction and back, the affidavit clearly establishes a nexus between Florence's residence and his criminal activity.

Additionally, the affidavit establishes that Florence is an active drug dealer. These drug transactions were "sufficient to establish that [Florence] was an active drug trafficker at the time the warrant issued." United States v. Coleman, 923 F.3d 450 (6th Cir. 2019). As such, the issuing

8

magistrate judge could infer that ATF investigators would likely find evidence at the Melbourne Road residence.

Because TFO Curley's affidavit establishes a reasonable probability that contraband or evidence of drug trafficking would be found at the Melbourne Road residence, Brooks and Florence's joint motion should be denied.

**B.    This Court is Not Precluded from Applying the Good Faith Exception**

Even if this Court disagrees with the government, the officers had a good faith basis to believe that the warrant was valid. The search survives in light of United States v. Leon, 468 U.S. 897 (1984), because the officers had a good faith basis to believe the warrant issued was valid. Leon determined, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." The Leon Court took pains to "emphasize" that the "standard of reasonableness we adopt is an objective one." Id. at 919 n. 20. See also Davis v. United States, 564 U.S. 229, at 238-39 (2011); United States v. Brooks, 594 F.3d 488, 496 (6th Cir. 2010); United States v. Frechette, 583 F.3d 374, 381 (6th Cir. 2009). Reliance on the warrant here was objectively reasonable. Under the good faith exception to the exclusionary rule announced in Leon, suppression of evidence seized under a search warrant generally is not justified except:

> 1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; 2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; 3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and 4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid.

United States v. Thomas, 605 F.3d 300, 311 (6th Cir. 2010); Leon, 468 U.S. at 923. None of those factors are present here.

Even if this Court disagrees with the Government's showing of probable cause, the evidence obtained during and after execution of the search warrant should be admitted based on the good faith exception. See United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994) (insufficient nexus between suspected drug dealer and bank safe deposit box, but motion to suppress evidence denied under "good faith exception"); Carpenter, 360 F.3d at 596 (collecting cases in which this Court "previously found Leon applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause); United States v. Moore, 661 F.3d 309 (6th Cir. 2011).

The Sixth Circuit has held that:

> [W]e examine the statements in the affidavit in light of settled canons for the judicial review of warrant affidavit language. Such affidavits 'are normally drafted by non-lawyers in the midst ... of a criminal investigation,' and should be interpreted in 'a commonsense manner,' not by imposing '[t]echnical requirements of elaborate specificity.' Minor discrepancies in the affidavit may reflect mere inadvertence or negligence, rather than the reckless falsehood that is required for exclusion.

United States v. Elkins, 300 F.3d 638, 649 (6th Cir. 2002) (internal citations omitted). As discussed above, the affidavit was not so lacking in indicia of probable cause that no reasonable officer could rely on it. The warrant included detailed information from a UC and detailed information about the controlled purchases.

This Court is not precluded from applying the good faith exception to the warrant requirement, because the affidavit was not so lacking in probable cause as to render the officers'

belief in its existence entirely unreasonable. The search survives in light of Leon because the officers had a good faith basis to believe the warrant issued was valid. Thus, the officers were entitled to rely on the warrant in good faith and, accordingly, "the harsh sanction of exclusion 'should not be applied to deter objectively reasonable law enforcement activity.'" Davis, 564 U.S. at 241 (quoting Leon, 468 U.S. at 919).

## III. CONCLUSION

For the foregoing reasons the government respectfully requests that this Honorable Court deny Brooks and Florence's joint motion to suppress without a hearing.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By: /s/ Colleen Egan
Colleen Egan (OH: 0083961)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3758
(216) 522-7499 (facsimile)
Colleen.Egan@usdoj.gov
